1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Jun 14, 2019**

SEAN F. McAVOY, CLERK

4

5 # UNITED STATES DISTRICT COURT

6 ## EASTERN DISTRICT OF WASHINGTON

7 | ROBERT H.,[1] | No. 2:18-cv-00229-MKD |
|---|---|
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 13, 14 |

8

9

10

11

12

13    Before the Court are the parties' cross-motions for summary judgment.  ECF

14 Nos. 13, 14.  The undersigned, having reviewed the administrative record and the

15 parties' briefing, is fully informed.  For the reasons discussed below, IT IS

16 RECOMMENDED Plaintiff's Motion, ECF No. 13, be granted and Defendant's

17 Motion, ECF No. 14, be denied.

18 _____

19 [1] To protect the privacy of plaintiffs in social security cases, the undersigned

20 identifies them only by their first names and the initial of their last names.

REPORT AND RECOMMENDATION - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

REPORT AND RECOMMENDATION - 2

1  ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5  *Sanders*, 556 U.S. 396, 409-10 (2009).

6  **FIVE-STEP EVALUATION PROCESS**

7  A claimant must satisfy two conditions to be considered "disabled" within

8  the meaning of the Social Security Act.  First, the claimant must be "unable to

9  engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  42 U.S.C. §

16  423(d)(2)(A).

17  The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

20  work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

REPORT AND RECOMMENDATION - 4

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

REPORT AND RECOMMENDATION - 5

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  ### ALJ'S FINDINGS

5  On February 1, 2016, Plaintiff applied for Title II disability insurance

6  benefits alleging a disability onset beginning January 8, 2015.  Tr. 151-52.  The

7  application was denied initially, Tr. 89-91, and on reconsideration, Tr. 96-97.

8  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on June

9  22, 2017.  Tr. 38-69.  On August 9, 2017, the ALJ denied Plaintiff's claim.  Tr. 12-

10  30.

11  At step one of the sequential evaluation process, the ALJ found Plaintiff has

12  not engaged in substantial gainful activity during the period from his alleged date

13  of onset of January 8, 2015 through his date last insured of September 30, 2016.

14  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe

15  impairments: insulin dependent diabetes mellitus, morbid obesity, knee pain, back

16  pain with minimal pathology, and osteoarthritis.  Tr. 17.

17  At step three, the ALJ found Plaintiff does not have an impairment or

18  combination of impairments that meets or medically equals the severity of a listed

19  impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform

20  sedentary work but with the following limitations:

> [Plaintiff] can stand and walking [sic] fifteen to twenty minutes at a time.  If sitting, he would need the ability to stand and taking [sic] a one-minute to two minute stretch period every sixty minutes.  He can occasionally perform postural activities, must never climb ladders, ropes or scaffolds and never crawl.  He must avoid concentrated exposure to extreme temperatures, respiratory irritants, and must avoid all exposure to hazards.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 23.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: charge account clerk, printed circuit board assembler, and telephone information clerk.  Tr. 24.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 8, 2015, the alleged onset date, through the date last insured.  Tr. 24.

On May 24, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

REPORT AND RECOMMENDATION - 7

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him Title II disability insurance benefits under the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 13 at 12.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Plaintiff's treating physician, Dr. Baker, and the testifying medical expert, Dr. Smiley.  ECF No. 13 at 16-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

1  to opinions that are explained than to those that are not, and to the opinions of

2  specialists concerning matters relating to their specialty over that of

3  nonspecialists." *Id*. (citations omitted).

4        If a treating or examining physician's opinion is uncontradicted, the ALJ

5  may reject it only by offering "clear and convincing reasons that are supported by

6  substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

7  "However, the ALJ need not accept the opinion of any physician, including a

8  treating physician, if that opinion is brief, conclusory and inadequately supported

9  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

10  (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

11  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

12  may only reject it by providing specific and legitimate reasons that are supported

13  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81

14  F.3d 821, 830-31 (9th Cir. 1995).

15        *1. Dr. Baker*

16        Dr. Baker began treating Plaintiff in July 2016.  Tr. 475.  In May 2017, Dr.

17  Baker wrote a letter to Plaintiff's counsel opining on Plaintiff's functional level

18  based upon physical ability.  Tr. 748.  He opined Plaintiff's functional level was

19  "probably best defined by sedentary work," however, he would need to frequently

20  alternate between sitting and standing.  *Id*.  Specifically, Dr Baker opined Plaintiff

could only "sit or stand for 20 minutes of time, and then has to move about and then can return about 20 or 30 minutes later." Tr. 748. The ALJ assigned some weight to Dr. Baker's opinion, agreeing that Plaintiff was capable of sedentary work, but rejecting the remainder of the opinion. Tr. 22. Because Dr. Baker's opinion was contradicted by the opinion of testifying medical expert, Dr. Smiley, Tr. 42-48, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Baker's opinion. *See Bayliss*, 427 F.3d at 1216.

The ALJ rejected the opinion because it "failed to offer any objective findings to support his findings of functional limitations." Tr. 22. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. However, if treatment notes are consistent with the opinion, an opinion may not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). The Ninth Circuit has explained that the treating physician's "continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Lester*, 81 F.3d at 833.

Here, Dr. Baker's treatment records document numerous examinations prior to the date of his opinion, his diagnoses and treatment of Plaintiff's chronic pain

REPORT AND RECOMMENDATION - 10

1   with narcotic pain medication, his interpretation of x-ray findings of the lumbar

2   spine as showing "marked osteoarthritis and Schmorl nodes," as well as notes

3   related to the effectiveness of treatment and the impact of Plaintiff's pain on his

4   ability sit and stand. Tr. 447, 477, 532-34.

5        Defendant contends the ALJ "logically concluded" Dr. Baker's opinion was

6   unsupported by clinical findings because Dr. Baker prefaced his opinion stating it

7   was "[b]ased on our conversation," Tr. 748, and therefore, no error occurred

8   because the opinion was based on Plaintiff's discredited subjective complaints.

9   ECF No. 14 at 8-9.  The Ninth Circuit in *Ghanim*, contemplated that medical

10  sources rely on self-reports to varying degrees and held that an ALJ may reject a

11  medical source's opinion as based on unreliable self-reports only when the medical

12  source relied "more heavily" "on a patient's self-reports than on clinical

13  observations."  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, the

14  ALJ made no such finding.

15       In the Ninth Circuit, it is incumbent upon the ALJ to more thoroughly

16  evaluate the treating doctor's opinion:

17           To say that medical opinions are not supported by sufficient objective
             findings or are contrary to the preponderant conclusions mandated by the
18           objective findings does not achieve the level of specificity our prior cases
             have required, even when the objective factors are listed seriatim.  The ALJ
19           must do more than offer his conclusions.  [He or she] must set forth his own
             interpretations and explain why they, rather than the doctors', are correct.
20           Moreover[,] the ALJ's analysis does not give proper weight to the subjective
             elements of the doctors' diagnoses.  The subjective judgments of treating

REPORT AND RECOMMENDATION - 11

physicians are important, and properly play a part in their medical evaluations.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).  Accordingly, the ALJ was not entitled to reject Dr. Baker's opinion merely because the opinion did not "offer any objective findings."  Tr. 22.

The ALJ's error was not harmless.  An error is not harmless unless the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Here, Dr. Baker was the only source to opine that Plaintiff needed to "move about" while alternating between sitting and standing and that Plaintiff could not return to sitting or standing until about 20 or 30 minutes later.  Tr. 748.  Because these limitations were not incorporated into the RFC, the undersigned cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit Dr. Baker's opinion.

On remand, the ALJ should be instructed to specifically weigh Dr. Baker's opinion, take additional testimony from a medical expert if necessary, reconsider all of the medical and lay witness evidence in light of the ALJ's evaluation of Dr.

REPORT AND RECOMMENDATION - 12

Baker's and the medical expert's opinion, and, if necessary, resolve conflicts in the medical evidence.

### 2. Other Challenges

Plaintiff also generally contends the ALJ erred by relying on the opinion of testifying medical expert Dr. Smiley. ECF No. 13 at 16-17. Dr. Smiley opined that Plaintiff could perform sedentary work, except that as to standing (and presumably walking), he "probably shouldn't be up more than 15 minutes at a time." Tr. 48. The ALJ assigned Dr. Smiley's opinion great weight. Tr. 22. An ALJ may credit the opinion of a nonexamining expert who testifies at hearing and is subject to cross-examination. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (citing *Torres v. Sec'y of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)). However, there must be substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Id*. at 1039. An ALJ must set forth specific, legitimate reasons for crediting one medical opinion over a conflicting opinion. *Garrison*, 759 F.3d at 1012-13; *Lester*, 81 F.3d at 831.

Here, the ALJ did not set forth a reason for crediting Dr. Smiley's opinion over Dr. Baker's opinion; the ALJ described Dr. Smiley's testimony that Plaintiff's limitations did not meet a Listing. Tr. 22. The ALJ's failure to explain the reasons for the weight assigned to Dr. Smiley, in combination with the error in evaluating

the opinion of Plaintiff's treating physician, casts doubt on the existence of

substantial evidence.  Therefore, remand of this matter is necessary to reconsider

the medical evidence as a whole.

## B. Plaintiff's Symptoms Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his subjective symptom claims.  ECF No. 13 at 13-15.

As the undersigned recommends this matter be remanded  for further proceedings

to reevaluate the medical source opinions, any reevaluation must necessarily also

entail a reassessment of Plaintiff's subjective symptom claims as the ALJ's

analysis was based substantially on the medical evidence.  However, the

undersigned briefly addresses some of the arguments below.

An ALJ engages in a two-step analysis to determine whether to discount a

claimant's testimony regarding subjective symptoms.  Social Security Ruling

(SSR) 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether

there is objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged." *Molina*,

674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show

that [his or her] impairment could reasonably be expected to cause the severity of

the symptom [he or she] has alleged; [he or she] need only show that it could

reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester,* 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment

REPORT AND RECOMMENDATION - 15

an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 21.

### 1. Conservative Treatment Effective in Controlling Symptoms

The ALJ found Plaintiff's symptom claims were inconsistent with the "significant amount of symptom relief utilizing mere conservative measures." Tr. 21. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

REPORT AND RECOMMENDATION - 16

1    Moreover, evidence of "conservative treatment" is sufficient to discount a

2    claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481

3    F.3d 742 (9th Cir. 2007) (*citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.

4    1995) (treating ailments with an over-the-counter pain medication is evidence of

5    conservative treatment sufficient to discount a claimant's testimony regarding the

6    severity of an impairment)).

7        In discussing Plaintiff's allegations of pain, the ALJ characterized Plaintiff's

8    care as "mere conservative measures" without discussion of any of measures taken

9    by Plaintiff for treatment of his pain. Tr. 21; *see e.g.*, Tr. 532 (Sept. 2016: listing

10   Plaintiff's treatment modalities for pain as hydrocodone, physical therapy, and

11   naproxen). The record evidences that for numerous years Plaintiff has been

12   regularly and continuously prescribed narcotics and had a pain management

13   contract with his providers. Tr. 1015 (Sept. 7, 2010: noting Plaintiff "has been on

14   hydrocodone for 7 years," "has a history of vertebral compression fracture," and

15   signs a "Pain Management Agreement"); (Sept. 2010: prescribing hydrocodone-

16   acetaminophen 10-325 mg twice daily); Tr. 477 (Sept. 2016: treatment note of

17   Tyler Baker, M.D. stating he had undertaken a "long review of pain contract, risks

18   and benefits of opiates" and continuing prescription for Norco one tablet every six

19   hours started on Nov. 20, 2014). Other treatment modalities for pain which the

20   ALJ's analysis did not address included his prescription for Gabapentin for

REPORT AND RECOMMENDATION - 17

neuropathy of both his feet, an impairment diagnosed and continuously treated

since December 2013 through the period under review.[2]  *See* Tr. 276 (Dec. 2013:

noting pain and tingling in the feet, assessing diabetic neuropathy, and prescribing

300 mg gabapentin); Tr. 279 (Jan. 2014: reporting medication was improving pain

his feet but indicating ongoing problems); Tr. 307 (Mar. 2014: "Tingling noted in

both feet"); Tr. 416 (Mar. 2015: noting tingling in feet and prior medical history of

peripheral neuropathy); Tr. 437-38 (Sept. 2015: noting Plaintiff's description of

"aching sort of discomfort" and examination findings of "decreased sensation

---

[2] The ALJ appears to have considered neuropathy as a symptom of diabetes, rather

than a separate impairment.  Tr. 22 (discussing neuropathy and diabetes together).

At step two, the ALJ found that neuropathy was not a medically determinable

impairment due to the lack of evidence of motor loss prior to September 30, 2016.

Tr. 18.  This finding is unchallenged here, though  Dr. Smiley testified that

evidence of motor loss was necessary to meet *Listing* level severity.  Tr. 46.  It is

not evident whether the ALJ considered other medical signs that could establish

neuropathy as a medically determinable impairment.  *See Peripheral Neuropathy*

*Fact Sheet*, Nat'l Inst. of Neurological Disorders & Stroke,

*https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-*

*Sheets/Peripheral-Neuropathy-Fact-Sheet* (last updated Aug. 16, 2018).

1    limited to the feet but can perceive light touch throughout the lower extremities")";

2    Tr. 555-57 (Nov. 2016: noting "feet burning/hurting," treating neuropathy, and

3    suggesting neuropathy was "[c]onfirmed with [electromyography] in past.").  The

4    ALJ also did not discuss other measures and directives for pain control, including

5    referrals for physical therapy for back pain, neck pain, and shoulder pain during the

6    period in question.  Tr. 416 (Mar. 2015); Tr. 499 (July 2016); Tr. 477 (Sept. 2016:

7    "Doing PT for neck and shoulders at [V]alley PT").

8        Here, as in *Revels*, "[t]he ALJ provided no explanation why [s]he deemed

9    Plaintiff's treatment for pain 'conservative.'"  *Revels v. Berryhill*, 874 F.3d 648,

10   697 (9th Cir. 2017).  The ALJ should have considered all measures for symptom

11   relief, including the type, dosage, effectiveness, and side effects of medication

12   Plaintiff takes to alleviate his pain and other symptoms.  SSR 16-3p, 2017 WL

13   5180304, *8.

14       Regarding Plaintiff's diabetes, the ALJ found that although Plaintiff had

15   "experienced episodes of neuropathy," Plaintiff's diabetes had been "generally

16   controlled without long-term use of insulin" and "without complications."  Tr. 22.

17   Although substantial evidence supports the ALJ's conclusion that Plaintiff's

18   diabetes was controlled without long-term use of insulin, Plaintiff's neuropathy has

19   been continuously treated since 2013 with separate measures.  *See supra* (citing Tr.

20   276 (Dec. 2013: noting pain and tingling in the feet, assessing diabetic neuropathy,

REPORT AND RECOMMENDATION - 19

and prescribing 300 mg gabapentin twice a day), 279 (increasing medication

frequency to three times a day), 307, 416, 437-48, 555-57).  As the ALJ did not

address Plaintiff's treatment for neuropathy and associated foot pain, the

undersigned cannot find that the ALJ has properly weighed the evidence when

probative evidence is omitted from the ALJ's discussion of the evidence.  *See*

*Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (the Commissioner "may

not reject 'significant probative evidence' without explanation . . . and the "ALJ's

written decision must state reasons for disregarding such evidence.") (internal

quotations omitted).  On remand, the undersigned recommends that the ALJ be

directed to reassess Plaintiff's symptom claims as they pertain to neuropathy.

### 2.  *Lack of Medical Evidence*

The ALJ concluded Plaintiff experienced a "significant amount of symptom

relief," Tr. 21, Plaintiff's "treatment records proved devoid of continued or

sustained functional limitations," and his "his providers noted little to no

limitations" in lifting, walking, sitting, and standing.  Tr. 23.

An ALJ may not discredit a claimant's symptom testimony and deny

benefits solely because the degree of the symptoms alleged is not supported by

objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

1  2005).  However, the medical evidence is a relevant factor in determining the

2  severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at

3  857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective evidence is a factor which

4  may be relied upon in discrediting a claimant's testimony, although it may not be

5  the only factor.  *See Burch*, 400 F.3d at 680.

6       In support of this finding, the ALJ pointed to clinical observations recorded

7  in the medical evidence including: (1) normal gait and range of motion in the feet,

8  Tr. 21 (citing Tr. 339 (Jan. 2015: provider note for treatment of dog bite)); (2)

9  normal neurological and motor functioning, Tr. 21 citing (Tr. 383 (Mar. 2015:

10 hospital treatment note for chest pain)); (3) "normal range of motion bilaterally,"

11 Tr. 21 (citing Tr. 476 (July 2016: physical examination finding "normal range of

12 motion bilaterally," "moderate crepitus bilaterally"); Tr. 478 (Sept. 2016: physical

13 examination with no range of motion finding)); (4) normal curvature, alignment,

14 strength and coordination of the back, Tr. 21-22 (citing Tr. 478 (Sept. 2016:

15 physical examination musculoskeletal finding indicating "back with normal

16 curvature and alignment. Slight hyperkyphosis thoracic.  Moderate tenderness,

17 tight muscles in region."); Tr. 569 (Nov. 2016: emergency room visit related to

18 facial tingling); and (5) normal strength in the shoulders, elbows, wrists, finger

19 abduction, and grip, Tr. 22 (referring generally to Tr. 587-650 (Providence Primary

20 Care South primary treatment records dated September 2016 to March 2017)).  The

REPORT AND RECOMMENDATION - 21

1    ALJ also noted that Plaintiff's knee x-ray in September 2016 showed "nothing

2    more than minor patellofemoral arthritis of the knee."  Tr. 22 (citing Tr. 530).

3        Here, the ALJ relied upon the lack of objective medical evidence as a basis

4    for the rejection of Plaintiff's pain and failed to clearly draw an accurate and

5    logical bridge from the evidence to the suggestion that Plaintiff's symptoms were

6    adequately relieved.  The ALJ pointed to various objective findings, some from

7    one-time examinations entirely unrelated to Plaintiff's impairments, which do not

8    necessarily contradict any of Plaintiff's symptom claims.  For example, Plaintiff's

9    full strength in his elbows, wrists, fingers, and grip, does not contradict his claims

10   that he is unable to sit or stand for the duration necessary to persist in sedentary

11   work.  In addition, the ALJ's discussion of the objective evidence reflects a

12   selective reading of the record without addressing the objective evidence

13   supportive of Plaintiff's claims of pain during the period in question.  Most

14   notably, the ALJ did not discuss any of the five imaging studies of the spine,

15   described by Plaintiff's treating physician in 2016 as showing "marked

16   osteoarthritis and Schmorl nodes in lumbar spine."  Tr. 534; *see* Tr. 921 (Sept.

17   2009: "severe multilevel spondylosis involving the lower thoracic spine with disc

18   space narrowing and vacuum disc phenomenon; There is also wedging of the lower

19   thoracic vertebra.  The appearance is consistent with osteochondrosis."); Tr. 1429

20   (Oct. 2010: "extensive" and "[m]ultilevel degenerative disc disease noted in the

REPORT AND RECOMMENDATION - 22

1  thoracic spine, accompanied by Schmorl's nodes, probably Scheuermann's

2  disease."); Tr. 1441 (May 2011: "mild wedge deformities lower thoracic spine");

3  Tr. 299 (Mar. 2014: "mild anterior wedging of T11, T12, and L1," unchanged

4  compared to February 2014); Tr. 410 (Mar. 2015: "multilevel degenerative disc

5  disease and mild anterior wedge deformities in the visualized lower thoracic

6  spine.").  Contrary to the ALJ's finding that there was "no evidence of loss of

7  range of motion or muscle strength," Tr. 23, the ALJ overlooked the March 18,

8  2015 physical therapy evaluation with clinical findings documenting reduced range

9  of motion in the spine and shoulder, and postural weakness/dysfunction of the

10 thoracic spine with kyphosis.  Tr. 416.  Although Plaintiff's arthritis of the knee

11 was described as "minor" in x-rays, Tr. 530, Plaintiff's physician indicated

12 Plaintiff's knee pain secondary to arthritis "is exacerbated by weight."  Tr. 283

13 (Jan. 2014).

14     It is unclear whether the ALJ considered all material evidence as the ALJ

15 discussed only isolated objective findings during certain physical examinations.

16 Plaintiff's treatment record reflects long-term treatment for chronic back pain and a

17 history of "decreasing . . . functional activity tolerance stemming from work in the

18 dairy case for Walmart supermarkets in 2013/14."  Tr. 759.  Plaintiff testified he

19 ceased working as a deli clerk due to his inability to physically perform the work.

20 Tr. 53, 532.  From at least April 2013 to July 2016, Plaintiff's primary provider

1  was Mary Gallegos, ARNP.  Tr. 256-348, 399-467, 490-520.  Although Ms.

2  Gallegos did not state an opinion regarding Plaintiff's functional limitations, her

3  treatment notes reflect the fact she continuously prescribed Plaintiff narcotic pain

4  medications, encouraged Plaintiff's weight loss goals for bariatric surgery, and

5  referred Plaintiff for physical therapy.  *Id*.  In 2015 (during the period under

6  review), Ms. Gallegos noted Plaintiff's shoulder pain was affecting his work and

7  she referred him for physical therapy.  Tr. 400 (noting decreased strength, range of

8  motion and pain in the shoulder).  The physical therapy evaluation subsequently

9  performed was the sole formal physical evaluation conducted during the period

10  under review, which revealed significant clinical findings the ALJ did not discuss.

11  Tr. 416.  In July 2016, Ms. Gallegos' treatment note indicated that Plaintiff's pain

12  affects his "general activity, interaction with people, mood, sleep, ability to work,

13  [and] enjoyment of life." Tr. 497.  She again referred Plaintiff to physical therapy

14  for back, neck and shoulder pain and ordered additional x-rays of the spine, which

15  do not appear in the record.  Tr. 499, 519.  In July 2016, Plaintiff began treatment

16  with Tyler Baker, M.D.  Tr. 475.  After a chronic narcotic pain medication intake

17  assessment, Dr. Baker continued treatment of Plaintiff's chronic midline thoracic

18  back pain with narcotic pain medication.  Tr. 532-34.  Dr. Baker's September 2016

19  treatment note states Plaintiff could do housework with medication "for about 30

20  minutes, and then has to sit [for] fifteen [minutes] and repeats.  Off [medication]

REPORT AND RECOMMENDATION - 24

could not.  Doing [physical therapy] for neck and shoulders…"  Tr. 534; *see also*

Tr. 748.  Dr. Baker later opined Plaintiff needs to alternate frequently between

sitting and standing, and after sitting or standing for twenty minutes, he would

have to "move about and then can return about 20 or 30 minutes later."  Tr. 748

(May 2017).  Dr. Baker commented on the need for a referral to physical therapy

for functional capacity evaluation/testing, which does not appear to have ever been

ordered by Dr. Baker or the Commissioner.  Tr. 748.

     The ALJ also did not consider the location, duration, frequency and intensity

of Plaintiff's pain and factors that precipitated and aggravated the symptoms.  *See*

Tr. 497 (July 2016: rating average daily pain between four and 10 out of 10,

indicating pain reaches maximum intensity daily, and stating pain affects his

"general activity, interaction with people, mood, sleep, ability to work, enjoyment

of life."); Tr. 532 (Sept. 2016: rating current effectiveness of treatment as eight out

of 10); Tr. 533 (Sept 2016: discussing "Pain Interference score" and describing

pain as worse in his low back, continuous, and exacerbated by standing in one

place for more than five minutes, walking for more than 15 minutes, and sitting

more than 30 minutes); Tr. 534 (describing prior injuries including 23 car accidents

and falls and Plaintiff's estimate of the amount of pain relief he receives as "80-

90%").

1    The ALJ failed to discuss relevant, probative objective medical evidence.[3]

2    On remand, the ALJ's decision should reflect the ALJ's consideration of all

3    significant and probative evidence.

4    **C. Remedy**

5    Plaintiff urges this Court to remand for an immediate award of benefits.

6    ECF No. 13 at 17-18.

7    "The decision whether to remand a case for additional evidence, or simply to

8    award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

9    1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir.

10    1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily

11    must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d

12

_____

13    [3] Plaintiff's Motion also suggests the ALJ discounted Plaintiff's symptom claims

14    because Plaintiff could walk the dog, travel independently, shop in stores, interact

15    appropriately with family members, play X-box and watch movies. ECF No. 13 at

16    14-15. However, these activities were discussed by the ALJ in relationship to the

17    Paragraph B criteria; they were not a basis identified by the ALJ for the rejection

18    of Plaintiff's symptom claims. Tr. 18, Tr. 21-23. Defendant's Motion does not

19    claim the ALJ relied upon activities of daily living. ECF No. 14 at 3-7.

20    Accordingly, the Report and Recommendation need not address this argument.

REPORT AND RECOMMENDATION - 26

1  1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

2  2004) ("the proper course, except in rare circumstances, is to remand to the agency

3  for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec.*

4  *Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social

5  Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of

6  discretion for a district court not to remand for an award of benefits" when three

7  conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

8  credit-as-true rule, where (1) the record has been fully developed and further

9  administrative proceedings would serve no useful purpose; (2) the ALJ has failed

10 to provide legally sufficient reasons for rejecting evidence, whether claimant

11 testimony or medical opinion; and (3) if the improperly discredited evidence were

12 credited as true, the ALJ would be required to find the claimant disabled on

13 remand, the Court will remand for an award of benefits.  *Revels*, 874 F.3d at 668.

14 Even where the three prongs have been satisfied, the Court will not remand for

15 immediate payment of benefits if "the record as a whole creates serious doubt that

16 a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

17       Here, further proceedings are necessary.  As discussed *supra*, the ALJ erred

18 in evaluating the medical opinions regarding functional limitations from Plaintiff's

19 physical impairments.  Ambiguities in the record exist concerning the combined

20 impact of all of Plaintiff's severe and non-severe impairments, which should be

REPORT AND RECOMMENDATION - 27

addressed through the administrative process in the first instance.  On remand, the ALJ should allow Plaintiff the opportunity to testify at a new hearing and to submit any additional relevant medical evidence.  The ALJ should call a medical expert to testify regarding Plaintiff's physical impairments and resulting limitations during the period in question and conduct the sequential evaluation analysis anew.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the undersigned concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, be **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, be **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which

REPORT AND RECOMMENDATION - 28

objection is being made, and the basis therefor.  Any response to the objection

shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of

service.

A district judge will make a *de novo* determination of those portions to

which objection is made and may accept, reject or modify the magistrate judge's

determination.  The judge need not conduct a new hearing or hear arguments and

may consider the magistrate judge's record and make an independent

determination thereon.  The judge may, but is not required to, accept or consider

additional evidence, or may recommit the matter to the magistrate judge with

instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern

District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of

appeals; only the district judge's order or judgment can be appealed.

///

///

///

REPORT AND RECOMMENDATION - 29

1      The District Court Executive is directed to enter this Report and

2   Recommendation, forward a copy to counsel, and **SET A CASE**

3   **MANAGEMENT DEADLINE ACCORDINGLY.**

4      DATED June 14, 2019.

5                              <u>s/Mary K. Dimke</u>
                             MARY K. DIMKE
6               UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

REPORT AND RECOMMENDATION - 30